IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DADRAIN DANTWONE BANKS                                                                PLAINTIFF

v.                                    Civil No. 6:20-CV-06110

LIEUTENANT JAMISON, *et. al.*                                                        DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff is currently incarcerated in the Garland County Detention Center ("GCDC"). Plaintiff filed his Complaint and *in forma pauperis* ("IFP") application on September 24, 2020. (ECF Nos. 1, 2). That same day, the Court entered an Order directing Plaintiff to file an Amended Complaint, and to submit a completed IFP application or pay the filing fee by October

1

16, 2020. (ECF No. 3).¹ On October 21, 2020, Plaintiff filed a Motion for Summary Judgment, which was denied on October 22, 2020. (ECF Nos. 7, 9). On October 22, 2020, mail sent to Plaintiff was returned as undeliverable due to a typographical error on the mailing label. The mail was resent to Plaintiff's correct address. (ECF No. 10). Plaintiff submitted a second IFP application and an Amended Complaint on October 22, 2020. (ECF Nos. 11, 12). With his second IFP application, Plaintiff stated, for the second time in this case, that GCDC staff refused to complete and sign the inmate funds certificate for his IFP application. (ECF No. 12 at 3). On October 26, 2020, the Court entered an Order directing Sheriff McCormick to complete the inmate funds certificate for Plaintiff by November 9, 2020. (ECF No. 13). The completed inmate funds certificate was filed on November 2, 2020, (ECF No. 14) and Plaintiff was granted IFP status on November 3, 2020. (ECF No. 15). This IFP Order, as well as the initial Order provisionally filing his Complaint (ECF No. 3), advised Plaintiff that he must advise the Court of any address change within thirty days of the change, or his case would be dismissed.

On November 4, 2020, mail sent to Plaintiff at GCDC was returned as undeliverable, and the deadline for Plaintiff to inform the Court of his new address was set for December 4, 2020. (ECF No. 17). On December 7, 2020, the Court entered an Order directing Plaintiff to Show Cause for his failure to advise the Court of his new address by December 28, 2020. (ECF No. 18). Plaintiff did not file a Response to the Order, but instead filed a Motion to Voluntarily Dismiss all female medical and GCDC staff from this case and his other pending cases. (ECF No. 19). Plaintiff identified the female medical staff as nurses Kayla, Bruse, Denise, Anna Walker, and Feilder. (*Id*. at 1). He identified the female GCDC staff as Corporal York, Corporal

---

¹ Due to a misreading of the docket text, two additional text-only orders were also sent duplicating the directive to submit a completed IFP application and Amended Complaint. (ECF Nos. 5, 6).

Jones, Corporal Hall, Sergeant Branstetter, Sergeant Sowell, and Captain Belinda Cosgrove. (*Id.* at 5). The return address on this Motion indicated that Plaintiff was still incarcerated at GCDC. (*Id.* at 8). At this time, it is not clear why mail was returned to the Court in early November indicating the Plaintiff was no longer at GCDC. Plaintiff's Motion to dismiss the female medical and GCDC staff was granted on January 22, 2021. (ECF No. 20).

For his first claim, Plaintiff alleges that excessive force was used against him on August 28 and 29, 2020. (ECF No. 11 at 4). Specifically he alleges that he was wearing handcuffs and on his daily one-hour break, escorted by two guards. When he grabbed the door to access the unit's outside gym area, Deputies Killin and Blunkel[2] grabbed him, pulled his feet "up from under him," threw him down on the concrete floor, put their knees on his back, and twisted his shoulders and neck. (*Id.* at 4). Plaintiff alleges that this resulted in injuries to his back and shoulders. (*Id.*). Plaintiff appears to allege that the GCDC U.T.F. two-man escort policy does not require a supervisor to be present, and GCDC policy also does not require a medical exam or pictures after the "take-down" of an inmate. (*Id.* at 5).

For his second claim, Plaintiff alleges that he was denied medical care on August 28 and 29, 2020. (*Id.*). Plaintiff alleges that Nurse Feilds[3] refused to examine him properly after the take-down. Instead, Nurse Feilds attempted to examine him by looking through Plaintiff's cell window. (*Id.*). Plaintiff appears to allege that Turnkey Medical[4] and GCDC have a policy of not providing full physical examinations of inmates, including photographs, after physical force is

---

[2] Plaintiff names several other Defendants for this claim, but makes no allegations against them. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)).

[3] Plaintiff names several other Defendants for this claim, but makes no allegations against them. *See Madewell*, *supra* n. 2.

[4] Turnkey is not identified as a Defendant in this case.

used on inmates with mental illness issues.  (*Id*. at 6).  Nurse Feilder was dismissed from this case on January 22, 2021, at Plaintiff's request. (ECF Nos. 19, 20).  Due to the distinctive and similar spelling of the two names, the Court will assume that Nurse Feilder and Nurse Feilds are the same person, and will, therefore, not consider this claim further.

For his third claim, Plaintiff alleges he was denied access to the courts on several dates in July, August, and September of 2020.  Plaintiff alleges that GCDC staff[5] would not let him use the kiosk to order envelopes, refused to give him his legal mail, and opened, read and took pages from his legal mail, then resealed the envelopes with "glue glue." (*Id*. at 6).  Plaintiff alleges that GCDC does not require staff members to handle mail while in view of video cameras or while wearing a body camera, and does not have a mail box in each unit for inmates to place mail into. (*Id*. at 7).

Plaintiff proceeds against all Defendants in both their official and personal capacities. (*Id*. at 4-6).  He seeks compensatory and punitive damages.  (*Id*. at 7).

## II.  LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."

---

[5] Plaintiff names a number of Defendants for this claim, but, as addressed in the analysis section, he failed to state a denial of access to courts claim, so the list will not be repeated here.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. ANALYSIS

Plaintiff's denial of access to courts claim is subject to dismissal. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim,

5

inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993).  "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Here, Plaintiff has failed to allege that he suffered any actual injury due to the GCDC mail-handling process or any mail-handling by GCDC staff.   The Court further notes that in this case, Plaintiff has been able to file a initial Complaint and an Amended Complaint, two IFP applications, two motions, and was able to communicate to the Court that GCDC staff were allegedly refusing to complete the inmate certificate of account.  In another case in this District, *Banks v. Ford*, Case No. 6:20-cv-06075, Plaintiff filed an initial complaint, two amended complaints, eleven motions, three supplements, three notices, and one objection to a report and recommendation.  He also currently has at least three cases pending in this District.  Clearly, his ability to access the federal court system has in no way been impeded by any process or person at GCDC.

### IV.  CONCLUSION

Accordingly, I recommend that Plaintiff's official and personal capacity claim against Deputies Killin and Blunkel for the use of excessive force against him on August 28 and 29, 2020 remain for further review.   I recommend that all other Defendants and claims be DISMISSED WITHOUT PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of February, 2021**.

/s/ Mark E. Ford
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE